IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

vs.                                          CIVIL NO. 01-0217 JC/LFG
                                              CRIMINAL NO. 97-0315 JC

DARRYL ANTHONY KELLY,

        Defendant-Movant.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1.      This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence brought under 28 U.S.C. § 2255 [Doc. 1]. Movant Darryl Anthony Kelly ("Kelly") attacks the sentence entered by the United States District Court for the District of New Mexico in United States v. Kelly, No. CR 97-315 JC. The government filed an Answer to Kelly's Motion on June 26, 2001. [Doc. 10].

2.      Kelly pled guilty to a one-count information, charging him with possession with intent to distribute five grams or more of a mixture or substance containing cocaine base, in violation of 21

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Judgment was filed on April 21, 1999, and Kelly was sentenced to five years' imprisonment. He did not appeal his conviction.[2]

       3.      Kelly asserts the following grounds for review: (1) involuntariness of the guilty plea in that the government breached its promise to depart below the sentencing guideline range; (2) ineffective assistance of counsel in that his attorney failed to argue that Kelly was entitled to an additional downward departure during sentencing; (3) prosecutorial misconduct in that the government incorrectly applied the sentencing guidelines; and (4) "professional misconduct" in that the United States Probation Office incorrectly calculated Kelly's criminal history category points, thereby foreclosing any reduction below the statutory minimum sentence, under 18 U.S.C. § 3553(f)(1)-(5), the "safety valve" exception.

## Factual and Procedural History

       4.      The factual and procedural history of this case are taken from court records, including the pre-sentence report and case file in CR 97-315, the case file in CIV 01-217, the briefing and attachments of the parties, the transcripts of the plea hearings, held on July 16, 1998 and February 16, 1999, and the transcripts of the sentencings held on February 23, 1999 and April 8, 1999.

       5.      On April 23, 1997, Kelly was arrested on an eastbound Amtrak train from Los Angeles, while it was stopped at the Albuquerque train station. DEA Agents were making a routine check for narcotics and other contraband. Prior to the train's arrival, Agents noticed that Kelly was traveling on a one-way ticket from Los Angeles to Chicago and had purchased the ticket on the day

---

[2]Kelly asserts in his Motion to Vacate that he filed an appeal and even petitioned the Supreme Court for certiorari (Doc. 1, at 2). However, there is no record of Kelly's purported appeal other than his appeal of the denial of his suppression motion, and no record at all of any certiorari petition. (Doc. 10, at.3 n.3.) Notwithstanding Kelly's apparent failure to appeal, the Court will address the merits of Kelly's argument.

of departure. Special Agent Kevin Small went to Kelly's door and asked for permission to speak to him and to search his luggage. Kelly handed Agent Small a bag that contained over 242 grams of crack cocaine.

6. On July 16, 1998, Kelly entered into a plea agreement with the government [Doc. 98 in CR 97-315], in which he pled guilty to the one-count indictment charging him with intent to distribute 50 grams or more of a mixture of substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), an offense carrying a statutory minimum sentence of ten years. Kelly was informed in the plea agreement and at the plea hearing that he would receive "not less than ten years" of confinement and not more than life. During the July 16, 1998 Plea Hearing, Kelly was informed that under the Sentencing Guidelines, he was eligible for a reduction of three offense levels for acceptance of personal responsibility and two offense levels for being a minor participant. His counsel raised the argument that Kelly might be eligible for a further reduction of his sentence if the government believed he was a minimal participant or entitled to the "safety valve" exception. The Court and counsel agreed that Kelly could raise these arguments at sentencing. (July 16, 1998 Transcript ("July 16 Tr") at 7-8.) Kelly agreed that he would not appeal or contest any findings the court made on the sentence with respect to the stipulations that were discussed at the July 16 Plea Hearing. (July 16 Tr. at 9.) Kelly agreed that under the July 16 Plea Agreement, he could be sentenced to ten years of confinement and that he had waived his right to appeal. (July 16 Tr. at 9-10.) Kelly pled guilty. (July 16 Tr. at 9-10.)

7. On February 16, 1999, a second plea hearing was held, in which the government agreed to allow Kelly to plead to an information charging him with violation of 21 U.S.C.

§ 841(b)(1)(B), which was the lesser included offense in the indictment.³ (February 16, 1999 Transcript ("Feb. 16 Tr.") at 3.) The Court asked whether it should retake Kelly's plea and his counsel stated it was unnecessary. The Court then asked Kelly if he understood. Kelly answered that he did understand, and he then pled guilty. (Feb. 16 Tr. at 4.) The Court began with the sentencing; however, counsel for Kelly moved to continue the sentencing because he wished to explain additional options to Kelly regarding his prior drug history and possible drug rehabilitation in prison. (Feb. 16 Tr. at 7.)

8. On February 23, 1999, the sentencing continued. Kelly's attorney argued for an additional reduction under Sentencing Guideline § 5K2.12 based on Kelly's contention that he had committed the offense out of coercion or duress. (February 23, 1999 Transcript ("Feb. 23 Tr.") at 2-4.) Kelly's attorney also raised the possibility that Kelly was entitled to a downward departure under § 5K1.1 for substantial assistance to the government although he admitted that the government already had the information it needed to solve the homicide in question. (Feb. 23 Tr. at 4-6.) The Court continued the sentencing in order to obtain any additional testimony that was pertinent regarding these arguments raised by Kelly. (Feb. 23 Tr. at 8.)

9. On April 8, 1999, Kelly was sentenced to five years of imprisonment. The Court found that Kelly had a criminal history category of 2, establishing a guideline imprisonment range of 927 months. (April 8, 1999 Transcript ("April 8 Tr.") at 5.) The Court departed downward based on Sentencing Guideline § 5K2.12, finding that Kelly's criminal conduct resulted out of fear for his life. (April 8 Tr. at 5-6.) The Court then reduced Kelly's offense level of 29 to 20, with a resulting

---

³The indictment was replaced with an information on February 5, 1999, but the information was inadvertently excluded from the court file. [*See* Doc. 10.]

imprisonment range of 37 to 46 months. (April 8 Tr. at 6.) The government, however, informed the Court that the charge under 21 U.S.C. 841(b)(1)(B) sets a statutory mandatory minimum of five years, below which the Court could not depart.[4] (April 8 Tr. at 6.) The Probation Officer and Kelly's counsel agreed that the five year minimum was mandatory under the statute. (April 8 Tr. at 6.) The Court then departed downward from a level 29 to a level 24, with a range of 57 to 71 months. (April 8 Tr. at 7.) The Court explained that Kelly had waived his right to challenge his sentence or the manner in which it was determined. (April 8 Tr. at 9.)

## Discussion

### A. Failure to Appeal and/or Improper Collateral Attack

10. It appears that Kelly did not appeal, and a defendant who fails to attack his sentence on direct appeal generally is barred from raising the issue in a § 2255 proceeding unless he can show cause and prejudice or a fundamental miscarriage of justice. United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994), *citing* United States v. Frady, 456 U.S. 152, 102 S. Ct. 1584 (1982). However, the Court will proceed to decide Kelly's Motion on the merits, particularly in view of the fact that for some unknown reason, the Information to which Kelly pled and the signed final Plea Agreement were not located or found in the court file.

11. The government argues that Kelly waived his right to collaterally attack his sentence and that the Court should dismiss Kelly's § 2255 Motion for lack of subject matter jurisdiction. The government relies on express language regarding waiver in both plea agreements, one of which was not located. Again, the Court elects to address Kelly's Motion on the merits.

---

[4] Although it is not entirely clear from the record, it also appears that the government stated it would not move for a reduction below the statutory minimum level for "substantial assistance" under 18 U.S.C. § 3553(e). (April 8 Tr. at 7.)

**B.     Involuntary Plea**

12.     Kelly alleges that the voluntariness of his guilty plea was "tainted" because he did not understand the consequences imposed in accordance with that plea. The essence of Kelly's argument appears to stem from the Court's initial misstatement, at the April 8, 1999 hearing, of Kelly's sentencing guideline range and its subsequent correction of that range after objection by the government. Kelly contends that the government's objection to the Court's initial proposed confinement range was erroneous and that the government reneged on a promise. The Court found that Kelly's minimum mandatory confinement was five years and then allowed a downward departure based on Sentencing Guideline § 5K2.12 (Coercion and Duress). (Apr. 8 Tr. at 5.) The Court first proposed departing downwards by nine levels from an offense level of 29 to 20, resulting in a guideline imprisonment range of 37 to 46 months. (Apr. 8 Tr. at 6.) The government immediately objected to the proposed imprisonment range because the statutory minimum for the offense to which Kelly pled was five years' confinement. (Apr. 8 Tr. at 6; 21 U.S.C. § 841(b)(1)(B).) The government correctly pointed out that the only way Kelly could be sentenced to less than the five year statutory minimum was to find him "safety valve" eligible, which could not be done because of Kelly's criminal history.[5] (Apr. 8 Tr. at 6; 18 U.S.C. § 3553(f)(1); U.S.S.G. § 5C1.2.)

13.     The Due Process Clause of the Fourteenth Amendment requires an affirmative showing that an accused's guilty plea was entered knowingly and voluntarily before the trial court may accept the plea. See Godinez v. Moran, 509 U.S. 389, 400, 113 S. Ct. 2680, 2687 (1993); Parke v. Raley, 506 U.S. 20, 28, 113 S. Ct. 517, 523 (1992), *reh'g denied*, 506 U.S. 1087 (1993). A plea

---

[5]A second justification for imposing a sentence less than the mandatory minimum would be if Kelly had provided substantial assistance in a criminal investigation and the government had moved the Court under 18 U.S.C. § 3553(e) for such a reduction. No such motion was made in this case.

6

is made voluntarily when it is "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel" and is not "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." Brady v. United States, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970) (internal citation omitted).

14. During the first plea hearing on July 16, 1998, Kelly entered a guilty plea and was informed at that time that his guilty plea would result in a term of imprisonment of not less than ten years. (July 16 Tr. at 5.) When asked if he understood the terms of his sentence, Kelly answered, "Yes, sir." (July 16 Tr. at 5.) It was explained a second time to Kelly at the July 16 plea hearing that the statutory minimum was ten years. (July 16 Tr. at 9-10.) The Court explained to Kelly, "So if I sentence you to 120 months, and you're sitting in jail someplace and you decide you want to appeal, you have waived that right to appeal. In other words, that's it." Kelly responded: "I understand." (July 16 Tr. at 10.) Kelly signed the July 16 Plea Agreement, setting forth a minimum sentence of ten years. [Doc. 98.] The possibility that Kelly might be eligible for a reduced sentence below the statutory minimum under the "safety valve" exception was raised at the July 16 plea hearing, but no promises were made to Kelly. (July 16 Tr. at 7, 8, 9.)

15. Subsequent to the July 16 plea, the government agreed that Kelly could plead to the lesser included offense. (Feb. 16 Tr. at 3.) Kelly stated that he understood that he was pleading to the lesser included offense and proceeded to plead guilty. (Feb. 16 Tr. at 4.) Kelly, however, raised the possibility that the Court might depart downward from the applicable guideline range under Sentencing Guideline § 4A1.3 (Adequacy of Criminal History Category), if the Court found that his

7

past criminal conduct over represented the seriousness of his criminal history. (Feb. 16 Tr. at 5-6.) No promises or representations were made to Kelly that he would be eligible for further reductions of the sentencing guideline range at the July 16 plea hearing. (See Feb. 16 Tr. at 5-6.) Instead, the Court suggested that Kelly might look into agreeing to enter a prison rehabilitation program that could reduce his confinement time. (Feb. 16 Tr. at 6-8.)

16. At the July 23 sentencing, Kelly's attorney argued that Kelly might be entitled to a further reduction in his sentence under Sentencing Guidelines § 5K2.12 (Coercion and Duress) and § 5K.1.1 (Substantial Assistance to Authorities). The Court asked for testimony from DEA Agent Small to determine if Kelly's position that he was coerced could be corroborated. (July 23 Tr. at 9.) No promises were made to Kelly at the July 23 sentencing, other than the government's explanation that it wanted to give Kelly an opportunity to earn a departure and that it would be reasonable if Kelly's position could be corroborated by Agent Small. (July 23 Tr. at 5, 9.)

17. Kelly was allowed a downward departure under Sentencing Guideline § 5K2.12 (Coercion and Duress), resulting in an imprisonment range of 57 to 61 months. (Apr. 8 Tr. at 5-7.) Nothing permitted the Court to depart below the statutory minimum confinement of five years. Kelly was sentenced to five years' confinement. (Apr. 8 Tr. at 7.)

18. There is no indication on the record at either of the two plea hearings or two sentencings that Kelly was promised a sentence that he did not understand or receive. Kelly was aware of the nature and charges and consequences of the plea. (July 16 Tr. at 13.) He stated that he understood his plea of guilty during several of the plea hearings. The record makes clear that Kelly was fully aware of the consequences that he faced when he pled guilty, and that Kelly actively participated in raising questions during his plea hearings and sentencings. Again, while the record

reveals that the arguments regarding possible reductions of his sentence were raised and explored fully, nothing in the record shows that Kelly was promised a departure or a specific sentence that he did not receive.

19. Kelly's Motion to Vacate confirms that he understood what he was promised and that he received the sentence he was promised. "Petitioner was assured by his counsel that the government would ask for a five year term of imprisonment to be imposed of the petitioner agreed to sign the plea agreement without further delay." (Motion to Vacate at 4.) The Court's initial departure to an offense level of 20 and a possible imprisonment range of 37 to 46 months were mistaken as immediately and correctly pointed out by the government. The statutory minimum of five years for the offense is mandatory, and Kelly's circumstances did not permit the Court to avoid the statutory minimum. There is no indication that Kelly's guilty plea was induced by a promise that he would receive anything less than five years.

20. The Court's proposed finding is that Kelly has not met his burden of showing that his guilty plea was involuntary due to his alleged failure to understand the consequences of his plea. The record establishes that the consequences of Kelly's plea were fully explained to him and that he voluntarily and knowingly entered a plea of guilty.

### C. Ineffective Assistance of Counsel

21. Kelly argues that his attorney rendered ineffective assistance of counsel because he failed to object at the April 8, 1999 sentencing when the government explained to the Court that it could not depart below the statutory mandatory confinement period of five years. Rather than objecting, Kelly's attorney, as well as the Probation Officer, agreed that the Court was bound by the statutory minimum, in accordance with 21 U.S.C. § 841(b)(1)(B).

9

22. To establish ineffective assistance of counsel, Kelly must make a two-prong showing: (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). To prove deficient performance, Kelly must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 776 (10th Cir. 1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997).

23. The performance of Kelly's attorney, Ron Koch, at the plea hearings and sentencings, was not unreasonable, and certainly not "completely unreasonable." Mr. Koch's failure to object to the government's explanation to the Court that it could not avoid the statutory minimum of five years was proper. Mr. Koch should not be encouraged to make an unfounded and improper objection, which is what Kelly would have had him do. The failure to object to the imposition of a statutory minimum sentence, even though Sentencing Guidelines may permit a lesser sentence, does not demonstrate ineffective assistance of counsel. Santana v. United States, 98 F.3d 752, 756-57 (3rd Cir. 1996). The Court is powerless to impose a sentence below the statutory minimum without a motion of the government based on substantial assistance or the petitioner's satisfaction of the "safety valve" exception to the statutory minimum, neither of which occurred here. Id.; 18 U.S.C. § 3553(e); 18 U.S.C. § 3553(f)(1)-(5). "And because the court was powerless to impose a sentence

10

below the statutory minimum, [Petitioner] cannot show that his attorney's performance was objectively unreasonable as required by a claim for ineffective assistance of counsel." Santana, at 756.

24. Mr. Koch actually negotiated an advantageous plea for Kelly under all of the circumstances and did not perform deficiently. Kelly has failed, therefore, to establish the first prong of the Strickland test, and has no valid claim for ineffective assistance of counsel.

### D. Prosecutorial Misconduct

25. Kelly claims that the prosecution engaged in misconduct by incorrectly applying the sentencing guidelines. Specifically, Kelly alleges that the downward departure he received under Sentencing Guideline § 5K2.12 (Coercion and Duress) should have been calculated from the "new plea" rather than the "old plea," resulting in an offense level of 20 and a sentencing confinement range of 37 to 46 months. (Doc. 1 at 8; Apr. 8 Tr. at 6.)

26. Kelly's position appears to rest on the Court's first proposal to impose such a sentence, prior to the government's correction that Kelly could not avoid the mandatory statutory minimum of five years. (Apr. 8 Tr. at 6-7.) Sentencing Guideline § 5K2.12 only permits a reduction below the *applicable sentencing guideline range*. Section 5K2.12 does not allow the Court to avoid the statutory minimum sentence of five years. 21 U.S.C. § 841(b)(1)(B).

27. The government correctly applied the sentencing guidelines in relation to the applicable statutory mandatory confinement period. There is nothing in the record to indicate that the government promised Kelly a sentence of less than five years, and it is not "prosecutorial misconduct" to inform the court that it cannot impose a sentence below the mandatory minimum.

### E. Professional Misconduct by the United States Probation Department

28. Kelly alleges that the United States Probation Officer engaged in professional misconduct by incorrectly determining Kelly's criminal history category, thereby preventing Kelly from satisfying the requirements of the "safety valve" exception to the statutory minimum. (Doc. 1 at 9-10.)

29. Kelly's counsel objected to several portions of the Pre-Sentence Report regarding the calculation of Kelly's criminal history. (Doc. 102 in CR 97-315.) Specifically, Kelly claimed that paragraphs 37 and 41 of the criminal history portion of the Pre-Sentence Report were incorrect and that criminal history points should have been removed for the offenses described in those paragraphs. (Doc. No. 102.) However, there were no criminal history points given in relation to the offenses described in paragraphs 37 and 41. (Pre-Sentence Report at ¶ 37, 41.) Instead, Kelly received a total of 2 criminal history points related to criminal offenses described in paragraphs 36 and 43 of the Pre-Sentence Report.

30. Based on Sentencing Guideline § 4A1.1, those points are correctly calculated in accordance with Kelly's criminal history.[6] Kelly received two different suspended sentences, one in 1988 for reckless use of a weapon, and the other in 1990 for disorderly conduct. He was assigned one criminal history point for each of these suspended sentences under Sentencing Guidelines § 4A1.1, § 4A1.2(a)(3), § 4A1.2(e)(2). Because Kelly had more than one criminal history point, he

---

[6]The government argues that Kelly's criminal history points were assigned incorrectly and that he actually should have received a total of four rather than two points. However, it appears that the government may not have carefully considered Sentencing Guideline § 4A1.2(a)(3) that provides for suspended convictions to be counted under § 4A1.1(c). Section 4A1.1(c) states that one point is added for suspended sentences, and since Kelly received suspended sentences for the two relevant offenses, § 4A1.1(c) appears to be applicable rather than § 4A1.1(b) as the government argues.

could not satisfy all of the required elements of the "safety valve" exception to the mandatory statutory minimum. 18 U.S.C. § 3553(f)(1). Therefore, he was not eligible for a reduction below the statutory minimum of five years' confinement.

31. Moreover, in the event that Kelly argues his criminal history points should be reduced because his criminal history score over represents the seriousness of his criminal history, thereby justifying a further reduction of his sentence under Sentencing Guideline § 4A1.3, such argument is rejected. Section 4A1.3 does not authorize a court to subtract individual criminal points from Kelly's record and does not provide a court with any discretion in the calculation of the criminal history points. United States v. Owensby, 188 F.3d 1244, 1246, 1247 (10th Cir. 1999). A defendant may not avoid a statutory minimum under 18 U.S.C. § 3553(f) if the defendant has more than one criminal history point. Id. at 1245-46; 18 U.S.C. § 1353(f)(1).

32. It is the Court's proposed finding that the United States Probation Officer did accurately calculate the criminal history points, and therefore, that there was no professional misconduct in the determination of Kelly's criminal history.

## Recommended Disposition

(1) That Kelly's Motion to Vacate, brought under 28 U.S.C. § 2255, be denied and the case dismissed, with prejudice; and

(2) That Kelly's "Motion for Emergency Hearing for Writ of Habeas Corpus" (Doc. 2) be denied as moot.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge